## IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| AUDRA LYNN SAILORS | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | NO: 3:04CV00361  SWW |
| ALLTEL COMMUNICATIONS, INC. | * | |
| | * | |
| Defendant | * | |
| | * | |
| | * | |

### ORDER

Plaintiff Audra Lynn Sailors ("Sailors") brings this action against Alltel Communications, Inc. ("Alltel"), alleging that Alltel terminated her employment in wilful violation of the Family and Medical Leave Act ("FMLA").[1]  Before the Court is Sailors' motion *in limine* (docket entry #7) and Alltel's response (docket entry #12); Alltel's motion for summary judgment (docket entry #13) and Sailors' response (docket entry #20); and Sailors' motion for summary judgment on the issue of liability (docket entry #16) and Alltel's response (docket entry #22).  After careful consideration, and for the reasons that follow, the motions will be denied.

I.

Sailors began working for Alltel in May 2000 as a sales and service representative at Alltel kiosks located in Wal-mart stores.  Approximately two years after Sailors began working for Alltel, she was diagnosed with multiple sclerosis.  On September 6, 2003, Sailors submitted a leave of absence request and notification, requesting medical leave from September 6 to

---

[1]The case is set for a non-jury trial on November 14, 2005 in Jonesboro.

September 23, 2003.  Docket entry #17, Ex. 3.  In support of her request, Sailors wrote: "I have MS and I miss work when I have exacerbation.  I use all my vacation time & sick time.  I don't want to miss work, but when I have tremors, I can't work, and I can't control it.  *Id*.

In a letter dated September 22, 2003, Alltel's leave of absence administrator, LouAnn Ball ("Ball"), informed Sailors that her request for leave had been approved.  *See* docket entry #17, Ex. 1.  In addition to the letter approving her request for leave, Sailors received two memos from Ball, both dated September 22, 2003,  entitled "Employer Response to Employee Request for Family or Medical Leave."  *Id*.

The first memo references Sailors' September 6 request for leave and states, "You are . . . eligible for leave under the FMLA (and the requested leave will be counted against your 12 week FMLA entitlement)."  *Id*.  The second memo states: "You have been approved for leave of absence on an intermittent basis through November 30, 2003."[2]  The memo also states:  "As of the date of this letter, you have 48 days remaining on your FMLA entitlement and any approved time off associated with this request will be applied to this balance."  *Id*.  Sailors took medical leave from September 2, 2003 through September 23, 2003 and returned to work on September 24, 2003.  *See* docket entry #15, ¶ 8.

On October 12, 2003, Sailors submitted a second request for FMLA leave, due to exacerbation of her disease symptoms.  *See* docket entry #17, Ex. 8.  Sailors requested leave from September 30, 2003 to October 20, 2003.  *Id*.  In a letter dated October 17, 2003, Ball informed Sailors that her request for leave had been approved.  *See id*.  Ball also issued a memo to Sailors,

---

[2]Under the FMLA, an employee may take his or her leave in one continuous period of time or intermittently, in separate blocks of time, for a single qualifying reason.  *See* 29 C.F.R. §§ 825.203(c)(1), 825.203(a).

referencing her request for leave and stating, "You are . . . eligible for leave under the FMLA (and the requested leave will be counted against your 12 week FMLA leave entitlement)." *Id*.

Sailors took medical leave from September 30 through October 19, 2003, and she returned to work on October 20, 2003. On October 23, 2003, Alltel terminated Sailors' employment for excessive absenteeism. *See* docket entry #15, ¶ 8. On October 14, 2004, Sailors filed this lawsuit, asserting that Alltel's actions constitute a willful interference with her rights under the FMLA.

## II.

The FMLA entitles an "eligible employee" to take up to 12 weeks of leave in a 12 month period due to "a serious health condition that makes the employee unable to perform the functions of the position of the employee." *See* 29 U.S.C. § 2612(a)(1)(D). Generally, when an employee returns to work after taking FMLA leave, she is entitled to be restored to the position she occupied before she took leave. *See* 29 U.S.C. § 2612(a)(1).

The FMLA defines the term "eligible employee" as an employee who has been employed:

> (I) for at least 12 months by the employer with respect to whom leave is requested . . . ; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A). Excluded from the definition, is any employee employed at a worksite with fewer than 50 employees within 75 miles of that worksite. *See* 29 U.S.C. § 2611(2)(B)(ii).

III.

In support of its motion for summary judgment,[3] Alltel argues that Sailors fails to qualify as an "eligible employee" entitled to leave under the FMLA because she performed her job at kiosks where the total number of employees totaled 37.  Alternatively,  Alltel argues that Sailors exhausted any FMLA leave to which she may have been entitled days before she returned from sick leave.  Alltel maintains that it mistakenly informed Sailors that she had 48 days of FMLA leave available to her as of September 22, 2003. According to Alltel, as of September 22, 2004, Sailors had only 3 weeks of FMLA leave available, thus she exhausted her available leave on October 3, 2003.

In response to Alltel's motion for summary judgment, Sailors invokes the doctrine of equitable estoppel as a bar to Alltel's arguments challenging her entitlement to FMLA benefits. Sailors has filed a motion *in limine* and a motion for summary judgment on the issue of liability, asking the Court to equitably estop  Alltel from contesting her entitlement to FMLA benefits.

In *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002), the Eighth Circuit  held that the doctrine of equitable estoppel may prevent an employer from contesting an employee's entitlement to FMLA leave.  The plaintiff, Sam Duty, took medical leave for an episode of pain

---

[3]Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

and numbness associated with degenerative disc disease. After approximately 10 weeks of leave, Duty's doctor released him to "limited work." Duty attempted to return to work, but his employer informed him it had no limited work that fit his medical restrictions.

Approximately 12 weeks later, 22 weeks after Duty began his medical leave, his employer mailed him a letter stating that his leave qualified under the FMLA. The letter also stated that if Duty returned to work within 12 weeks from receiving the letter, he would have the right to employment. Twelve weeks after Duty received the letter, 34 weeks after his leave began, he attempted to return to work, only to learn that his employment had been terminated for excessive absenteeism.

Duty filed suit under the FMLA, and his employer defended that Duty had exhausted his FMLA leave long before it terminated his employment. Pursuant to the doctrine of equitable estoppel, the trial court prohibited the employer from denying that Duty was entitled to FMLA leave. The Eighth Circuit upheld the trial court's ruling, under an abuse of discretion standard, finding it reasonable to conclude that Duty "either did or reasonably could have" detrimentally relied on his employer's letter granting him FMLA leave. *Duty*, 293 F.3d at 494. The Eighth Circuit reasoned that because Duty attempted to return to work exactly 12 weeks after he received the letter, it was reasonable to infer that he relied on the FMLA leave time period defined in the letter. *Id.*

To succeed under the doctrine of equitable estoppel, Sailors must show that she reasonably relied on Alltel's conduct in such a manner as to change her position for the worse. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)(citing elements of equitable estoppel set forth in Restatement (Second) of Torts § 894(1)). Alltel argues that its letters and memos approving Sailors' requests for leave did

nothing to influence Sailors' course of conduct because she would have taken medical leave even if her requests had been denied.

In support of its argument, Alltel points to a portion of Sailors' deposition testimony in which she states that she was unable to work during her medical leave.  Sailors testified that it was impossible for her to work during periods of exacerbation and that Alltel's September 22, 2003 memo stating that she had 48 days of available FMLA leave gave her "a sigh of relief."  Docket entry #8, Ex. F at 60-61.  Sailors explained:

> But I did not know how  many FMLA days I had left until they sent me the letter, which I got, and it said that I had forty-eight days remaining.  But when you're sick, and as sick as I was, I did not want to miss work with all my heart and, but when you can't walk and you're shaking and all that, you, it's an impossibility to work.  So at that time, you know, although you don't want to lose your job or anything, you still have to take off work, you know.  That's the truth.

*Id*.

Under Alltel's reasoning, employees with serious health conditions, who by statutory definition are unable to work, have no recourse under the doctrine of equitable estoppel.[4]  Such an outcome is inconsistent with the Eighth Circuit's determination in *Duty*, that a plaintiff whose medical restrictions rendered him unable to perform his assigned job, or any available job, either did or reasonably could have detrimentally relied on his employer's representation that his medical leave was covered under the FMLA.

Furthermore, detrimental reliance may be shown by inaction.  Sailors returned to work on October 20, 2003, the day after her ostensibly approved leave expired.  Apparently, Sailors made

---

[4]Congress enacted the FMLA, in part, because of "inadequate job security for employees who have serious health conditions that *prevent them from working* for temporary periods."   29 U.S.C. § 2612.  Under the FMLA, an eligible employee is entitled to 12 workweeks of leave during any 12-month period if he or she has "a serious health condition that makes the employee *unable to perform the functions of the position of such employee*." 29 U.S.C. § 2612(a)(1)(D).

no attempt to seek employment elsewhere, nor did she request that Alltel accommodate her medical condition by making an exception to its leave policy. The fact that Sailors failed to take affirmative action to protect her employment status indicates that she relied to her detriment on Alltel's explicit statements that she was eligible for FMLA leave and that her absences were covered under the FMLA.

Alltel argues that even if Sailors relied on its representations regarding her available FMLA leave, such reliance was not reasonable. Alltel has come forward with evidence that in April 2002, Sailors' supervisor gave her a written warning regarding her absences and explained to her how Alltel determines employees' available FMLA leave. Alltel argues that because Sailors received information about its method for calculating FMLA leave, she should have known that Ball miscalculated her available FMLA leave. However, Sailors claims that Alltel gave her conflicting information regarding its method for calculating FMLA leave, and that she relied on Ball's calculations.

The Court concludes that Sailors has, at the least, raised genuine issues as to whether she reasonably relied, to her detriment, on Alltel's representations regarding her available FMLA leave. Because genuine issues of fact remain regarding the application of equitable estoppel in this case, neither Alltel nor Sailors is entitled to summary judgment, and Sailors' motion *in limine* will be denied.

IT IS THEREFORE ORDERED that Plaintiff's motion *in limine* (docket entry #7), Defendant's motion for summary judgment (docket entry #13), and Plaintiff's motion for partial summary judgment (docket entry #16) are hereby DENIED.

IT IS SO ORDERED THIS 3RD DAY OF OCTOBER, 2005.

                                             <u>/s/Susan Webber Wright</u>

                                             UNITED STATES DISTRICT JUDGE